PETERSON, Judge,
dissenting in part.
I concur in the majority opinion as to Divisions 1,3,4, and 5.1 join Judge Dillard’s dissent as to Division 2, and I agree with all that is said in that dissent that is necessary to its holding.[48] I write separately to make clear that I join the dissent not because I necessarily *580 believe that the rule outlined in that opinion is the best rule — that question is not presented here and I express no view on it — but because it is the rule that the precedents of our Court and our Supreme Court bind us to apply.
The special concurrence refuses to follow that binding precedent, and points to a number of our decisions in which we did not explicitly acknowledge or apply the general rule that suicide is an unforeseeable intervening cause of death. But in none of those decisions did we reject the general rule, either. And, more importantly, none of those decisions is a decision of our whole court overruling Appling v. Jones and its progeny.
Precedent does not cease to be binding simply because we can find subsequent cases that, for whatever reason, do not apply that precedent. Precedent does not cease to be binding even when we find subsequent decisions of less than the whole court explicitly refusing to follow it. See Dority v. State, 335 Ga.App. 83, 99 (4) (c) n.8 (780 SE2d 129) (2015) (statement in subsequent decision of less than whole court that prior case is of no precedential utility did not overrule prior case).
When we wish to reject prior precedent, as the special concurrence proposes, we should say so and employ the appropriate process. When the decisions we wish to change are our own, that process would be consideration by the whole Court. In this case, however, the Supreme Court’s precedent precludes any effort by this Court to change the rule
In Stevens v. Steadman, 140 Ga. 680, 681-84 (79 SE 564) (1913),[49] the plaintiff alleged that the defendants, in pursuance of a conspiracy to cause the death of the plaintiff’s husband and thereby benefit financially, wrote a letter to the husband blackmailing him into *581 quitting his job lest they publicly reveal unspecified and mysterious matters that would cause him and his family great harm. The plaintiff alleged further that the defendants knew of the husband’s impaired mental and physical state, and knew and intended that the letter would cause him to commit suicide, which he in fact did. Id. Our Supreme Court held that the defendants could not be liable, because without direct statements in the letter specifically urging the husband to kill himself, his suicide was not the “legal and natural result” of the defendants’ actions. Id. at 686-87; cf. OCGA § 51-12-9 (damages are too remote to be recovered when they are “traceable to the act, but. . . are not its legal and natural consequence”). Stevens has not subsequently been overruled by the Supreme Court or abrogated by statute, and remains binding on us. I see no way that we can conclude the wrongful death claim here can proceed if the claim in Stevens could not.
Decided March 30, 2016
Oliver Maner, Patrick T. O’Connor, Benjamin M. Perkins; Ray C. Smith, for appellants.
Jones, Osteen & Jones, Billy N. Jones, Carl R. Varnedoe, for appellee.
I am authorized to state that Judge Ray joins in this dissent.

 That said, I disagree with the inclusion in that dissent of footnote 46 and its associated text regarding decisions of the courts of our sister states, because it is irrelevant to the dissent’s holding. Judge Dillard’s dissent demonstrates conclusively that Georgia case law does not *580 extend the special-relationship exception to noncustodial relationships between law enforcement officers and the general public. A consideration of foreign law would be relevant here only if we were trying to determine what the rule should be. But as Judge Dillard has made clear, previous decisions of our court and our Supreme Court have already said what the rule is. Given that, it is unnecessary and irrelevant to consider what answers to that question the courts of our sister states may have provided in the context of their own laws. See Satilla Health Servs., Inc. v. Bell, 280 Ga. App. 123, 131 n.4 (633 SE2d 575) (2006) (declining to consider arguments regarding foreign law because Georgia law was clear).

 I agree with the special concurrence that the initial foundations of our present rule may have arisen in part from a now-outdated understanding of mental health. Our Supreme Court was explicit in Stevens that its decision was based on its understanding of mental health. 140 Ga. at 687 (holding that, “in the present state of our knowledge concerning the laws governing the operation of the mind,” suicide was not the legal and natural result of concerted efforts of a conspiracy allegedly designed to cause the decedent to kill himself). Obviously, our understanding of “the laws governing the operation of the mind” has improved dramatically in the 103 years since 1913. But because that outdated understanding was the Supreme Court’s, we would lack the authority to correct it even if we wanted to.